**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| CHAISON SUBER, | : | Case No. 2:25-cv-391 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Algenon L Marbley |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| DEPUTY BAILEY KHUNE, | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**REPORT AND RECOMMENDATIONS[1]**

---

This matter is presently before the Court upon Defendant Deputy Bailey Khune's Motion for Summary Judgment (Doc. #17), Plaintiff Chaison Suber's "Objection to Defendant's Motion …" (Doc. #24), and Defendant's Reply (Doc. #25).  The pending motion has been referred to the undersigned for a Report and Recommendations pursuant to 28 U.S.C. § 636 and General Order 22-05. This matter is now ripe for review.

**I.      BACKGROUND**

Plaintiff, who is currently in the custody of Ohio Department of Rehabilitation and Correction (ODRC), brought this civil rights action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while incarcerated at the Muskingum Couty Jail. (Doc. #s 5, 23). Plaintiff is proceeding *pro se* and *in forma pauperis*.

In his Complaint, Plaintiff alleges that Defendant ordered him to submit to a strip search on February 24, 2025.  (Doc. #1, *PageID* #1).  According to Plaintiff, Defendant specifically

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

ordered him to "bend over, squat and cough." *Id.* Plaintiff alleges, "after the squat and cough revealed nothing, Defendant inserted one of his fingers into Plaintiff's anus, and used his thumb to further an unlawful, intrusive search and he appeared to extract pleasure as he explored Plaintiff's inner parts." *Id.* at 1-2.

Upon initial review of Plaintiff's Complaint, the undersigned construed Plaintiff's allegations as Fourth Amendment unlawful search claims against Defendant Deputy Bailey Khune and permitted Plaintiff's claim to proceed. (Doc. #6, *PageID* #s 24-25).

In support of his Motion for Summary Judgment, Defendant provided his own Declaration and a copy of the incident report from February 24, 2025. (Doc. #17-1). In his Declaration, Defendant, a deputy sheriff with the Muskingum Couty Sheriff's Office, attests that on February 24, 2025, he was assigned to the booking area of the Muskingum County Jail. (Doc. #17-1, *PageID* #68). After a supervisor told him that an inmate housed in the jail was suspected of possessing illegal drugs, Defendant went to the Muskingum County Prosecutor's Office to gather additional information. *Id.* At the Prosecutor's Office, Defendant took custody of an informant who told Defendant the following:

> Joseph Zidich, who had recently been housed in the southwest dorm, told [the informant] that fentanyl was being sold in the southwest dorm. According to Zidich, Zidich personally purchased fentanyl from Chaison Suber. Suber was housed in the southwest dorm at the time on pending criminal charges. Zidich further indicated that Suber was obtaining fentanyl from another inmate in the same dorm, and that the fentanyl was being used in the dormitory's bathroom[]

*Id.* at 69.

Upon his return to the Jail, Defendant conducted a health and safety inspection of the southwest dorm with the assistance of four corrections officers. *Id.* Defendant did not find any illegal drugs during the inspection. *Id.* at 70. However, Defendant did find a light fixture above

2

the toilets that appeared to have been tampered with; the cover was broken, providing access to the ceiling. *Id.* Although Defendant could not see inside the ceiling, a photograph of the area appeared to show a jail-issued sheet. *Id.* Defendant was particularly concerned about this because the bathroom does not contain any surveillance cameras, "creating a potential opportunity for inmates to conceal contraband in an unmonitored area." *Id.*

After the inspection was completed, Defendant spoke to Corporal Foster, and they decided that Defendant should remove Plaintiff from the dorm "to confirm that he was not in possession of any contraband …." *Id.* at 71. Defendant and Officer Fox escorted Plaintiff to the booking area for a full body scan. *Id.* When Defendant looked up Plaintiff's information, he discovered that Plaintiff had not been scanned when he entered the facility. *Id.* After entering Plaintiff's information, Defendant conducted the scan "but could not discern anything of concern[.]" *Id.* However, according to Defendant, "The body scanner utilized at the Muskingum County Jail does not indicate or completely identify contraband that could otherwise been seen through a visual inspection." *Id.*

After the body scan, Defendant informed Plaintiff that he intended to conduct a strip search of Plaintiff "given the seriousness of the allegations[.]" *Id.* at 72. Defendant instructed Plaintiff to enter the shower room in the booking area; there are no cameras in the shower room, and a door provides privacy by preventing others from observing inmates. *Id.* at 72. According to Defendant, when he told Plaintiff to remove his clothing, Plaintiff initially refused but complied after Defendant reiterated the reasons for the search. *Id.* at 73. Defendant then describes the search:

> I then directed Mr. Suber to turn away from me. He then without instruction, rotated his right shoulder toward my position, squatted fully, and performed several quick light coughs before returning to the standing position; [] I informed him that I had not yet completed my instructions and that he needed to turn and face away from me again;[] I instructed Mr. Suber to bend at his torso, spread his

> buttocks with his hands, and cough deeply several times;[] Mr. Suber initially refused to comply with my instructions and requested another corrections officer be present. I reiterated to him the reason for the search and told him to wait while I attempted to locate another Officer; [] I opened the door and requested Corrections Officer Fox to enter the shower room and then closed the door; however, as I learned later, Officer Fox was occupied with other duties at the time; [] Before Officer Fox could arrive, Mr. Suber proceeded to face away from me, bend at the torso, and cough a few times in a weak manner. No contraband was observed. Corrections Officer Fox entered the shower room shortly after; [] I gave Mr. Suber clean jail issued clothing, and he returned to the southwest dorm[.]

*Id.* at 73-74.  Defendant attests that he did not perform a body cavity search, did not make any sexual comments or degrading remarks, and did not derive any sexual gratification from conducting the search.  *Id.* at 74.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Additionally, this initial burden may be satisfied by the moving party "pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Barnhart v. Pickrel Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1389 (6th Cir. 1993).

The burden then shifts to the non-moving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

4

(quoting Fed. R. Civ. P. 56(e)).  Here, in opposing summary judgment, the non-moving party cannot "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986).  Indeed, unverified pleadings and self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013).

Finally, in ruling on a motion for summary judgment, the court is "not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839 (1990).  Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. *See id*.

## III.    DISCUSSION

Defendant moves for summary judgment on Plaintiff's claims against him, asserting that he is entitled to qualified immunity because "Defendant did not violate Plaintiff's Fourth Amendment rights and, even if he did, Defendant did not violate clearly established law."  (Doc. #17).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).  In so doing, "qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials

from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808 (2009).

A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Id.* Additionally, while a defendant bears the initial burden of pleading the defense of qualified immunity, it is the plaintiff who "bears the ultimate burden of proof to show that [government officials] are not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (quoting *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005)).

### A. Unreasonable Search and Seizure under the Fourth Amendment

The Fourth Amendment to the United States Constitution protects individuals "against unreasonable searches and seizures." U.S. Const. Amend. IV. However, in a prison environment, an inmate's right to privacy is greatly diminished because prison officials must be afforded discretion on how they ensure the safety of inmates, staff, and the general public. *Wilkinson v. Austin,* 545 U.S. 209, 227, 125 S. Ct. 2384 (2005). Thus, to satisfy Fourth Amendment concerns, searches "must be conducted in a reasonable manner." *Bell v. Wolfish*, 441 U.S. 520, 560 (1979). A search conducted in an abusive fashion "cannot be condoned." *Id.* The Sixth Circuit has recognized that any type of "strip search"[2] is far more intrusive than a mere cell search or other "pat-down" body search. *See Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 572-573 (6th Cir. 2013).

---

[2]The term "strip search" is often used as an "umbrella term" that encompasses a variety of behaviors, ranging from the conduct described in *Stoudemire* (stripping to underwear), to a visual inspection of a fully naked individual without scrutiny of body cavities, to a visual body-cavity search which may include inspection of anal and genital areas. The most invasive type of "strip search" would be a manual body-cavity search, involving "some degree of touching or probing of body cavities." *Parkell v. Danberg*, 833 F.3d 313, 327 (3rd Cir. 2016).

In considering whether a particular search is reasonable, courts balance the prison's need for the search with the "invasion of personal rights that the search entails." *Salem v. Michigan Dep't of Corr.*, 643 F. App'x 526, 530 (6th Cir. 2016) (quotation marks and citations omitted).

> This inquiry can be divided into three considerations: (1) the nature of the intrusion, considering "the scope, manner, and location of the search"; (2) "the need for the search, giving due deference to the correctional officer's exercise of her discretionary functions"; and (3) "whether the search was reasonably related to legitimate penological interests by weighing the need against the invasion."

*Williams v. City of Cleveland*, 907 F.3d 924, 935 (6th Cir. 2018) (quoting *Stoudemire*, 705 F.3d at 572).  Notably, "'detect[ing] and deter[ing] the possession of contraband'" is a legitimate penological objective.  *Stoudemire*, 705 F.3d at 573 (quoting *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington,* 132 S. Ct. 1510, 1517 (2012))*.* Thus, in the absence of evidence to the contrary, courts "must assume that a search of a prisoner is initiated in an effort to detect and deter contraband." *Id.*

In this case, Defendant does not deny that the strip search occurred but maintains that it was reasonable under the circumstances. (Doc. #17, *PageID* #s 62-63).  Further, Defendant asserts that he had a legitimate penological objective—namely, the need to detect and deter contraband— for the search. *Id.* at 63-64.  Thus, Defendant contends that "the balance weighs decisively in favor of the search's constitutionality."  *Id.* at 65.  As noted above, Defendant provided his own Declaration, as well as an incident report, in support of his Motion.  (Doc. #17-1).

Plaintiff, on the other hand, has provided no evidence acceptable under Federal Rule of Civil Procedure 56 that this Court can consider in ruling on Defendant's Motion.  Rule 56 requires parties to support their factual assertions with admissible evidence.  Fed. R. Civ. P. 56(c), (e).  When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings.  *Viergutz v. Lucent Techs., Inc.,* 375 F. App'x 482, 485 (6th Cir. 2010).  Moreover, the

7

Sixth Circuit has explicitly held that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Id.*; *see also Johnson v. Stewart,* No. 08–1521, 2010 U.S.App. LEXIS 27051, at *6–7 (6th Cir. May 5, 2010) (holding "[t]he liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage.").

Here, Plaintiff relies upon allegations in his unverified complaint. However, "an unverified complaint does not provide competent evidence at summary judgment." *Brinkley v. Hamilton Cnty., Tennessee,* No. 24-5766, 2025 WL 884076, at *2 (6th Cir. Mar. 21, 2025) (citing *King v. Harwood*, 852 F.3d 568, 577–78 (6th Cir. 2017); *Worthy v. Mich. Bell Tel. Co.*, 472 F. App'x 342, 343 (6th Cir. 2012)). Plaintiff has not responded to Defendant's Motion with any admissible sworn statements, depositions, answers to interrogatories, or affidavits. Instead, in his unsworn Response, Plaintiff accuses Defendant of several crimes and questions the reliability of Defendant's "jailhouse snitch[]." (Doc. #24, *PageID* #94). Plaintiff's conclusory assertions cannot sustain his claim at this stage. *See Brinkley*, No. 24-5766, 2025 WL 884076, at *2 (citing *Arendale v. City of Memphis*, 519 F.3d 587, 601, 605 (6th Cir. 2008). Accordingly, Plaintiff has failed to create a genuine issue of material fact regarding any alleged constitutional violation. *See* Fed. R. Civ. P. 56(a); *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir. 2009) (stating that, at summary judgment, the plaintiff has the burden of "set[ting] forth specific facts showing that there is a genuine issue for trial" and that an issue of fact is "genuine" only if a reasonable jury could find for the plaintiff).

Moreover, although the undersigned recognizes that a strip search is inherently intrusive, Plaintiff has not shown the search of his person was conducted in an overly intrusive manner or in a place where he was overly exposed to public view. *Contrast Stoudemire*, 705 F.3d at 575 (double

8

amputee female inmate stated claim for "humiliating strip search in full view of several …

others"); *see also Salem v. Mich. Dept. of Corr.*, 643 F. App'x. 526 (6th Cir. 2016) (defendant not

entitled to qualified immunity where strip search of female inmates required them to sit on an

unwashed chair wet with bodily fluids from other prisoners and spread their labia in full public

view of others, without a legitimate penological justification for public and unsanitary conditions).

Instead, the evidence shows that Defendant conducted the search in the privacy of the shower room

in the booking area.  (Doc. #17-1, *PageID* #72).  The room did not contain any cameras, and the

door prevented others from observing Plaintiff.  *Id.*

Additionally, Plaintiff has failed to present any evidence that the strip search was

conducted for a purpose other than detecting contraband.  In contrast, Defendant attested that an

informant identified Plaintiff as a distributor of fentanyl in his dormitory and reported that fentanyl

was being used in the dormitory's bathroom.  (Doc. #17-1, *PageID* #69).  Upon an inspection of

the bathroom, Defendant discovered evidence of tampering with the bathroom's light fixture and

a suspicious object in the ceiling.  *Id.* at 70.  Further, when Defendant looked for Plaintiff's

information in the body scanner, he found that Plaintiff had no previous scans, suggesting that

Plaintiff was not scanned when he entered the jail.  *Id.* at 71.  Even after conducting a scan,

Defendant avers that the strip search was necessary because the body scanner "does not indicate

or completely identify contraband that could otherwise be[] seen through a visual inspection." *Id.*

Given Defendant's prior experience and "the extreme risk posed by fentanyl," Defendant believed

that a strip search of Plaintiff was "essential to prevent another potential overdose and to protect

not only [Plaintiff] but other inmates and staff as well[.]"  *Id.* at 72.  In sum, Defendant's

Declaration supports the conclusion that the strip search was conducted for the purpose of

detecting or deterring contraband, a legitimate penological objective. *See Stoudemire*, 705 F.3d at 573.

On balance, Defendant's legitimate need for the search—detecting or deterring contraband—and his utilization of the least intrusive means to conduct the strip search weigh in favor of finding the search constitutional.  Accordingly, the undersigned concludes that Plaintiff has not established a constitutional violation and recommends that the Court **GRANT** Defendant's Motion for Summary Judgment (Doc. #17).

**B.**     **Criminal Acts**

In Plaintiff's Response, he asserts that Defendant committed sexual assault, sexual battery, and/or sexual abuse against him.  (Doc. #24, *PageID* #91).  He later cites Ohio's rape statute, Ohio Revised Code § 2907.02.  *Id.* at 98.  However, upon review of that statute, as well as Ohio sexual battery statute, Ohio Revised Code § 2907.03, the undersigned finds that neither statute affords Plaintiff a private cause of action.  *See Hanna v. KFC Corp.*, No. 2:05-CV-788, 2005 WL 8162570, at *2 (S.D. Ohio Oct. 4, 2005) (Frost, D.J.); *West v. Landau*, No. 25-10420, 2025 WL 1108259, at *4 (E.D. Mich. Apr. 14, 2025), *reconsideration denied,* No. 25-10420, 2026 WL 373138 (E.D. Mich. Feb. 10, 2026) ("Criminal statutes do not generally confer a private cause of action in a civil case ….").  Therefore, to the extent that Plaintiff alleged claims against Defendant under these statutes, the undersigned **RECOMMENDS** that these claims be dismissed.[3]

**IV.     CONCLUSION**

For all the foregoing reasons, the undersigned **RECOMMENDS** that:

---

[3] Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is proceeding *in forma pauperis*, the Court must, at any time, dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a Defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2). Accordingly, the undersigned also uses its authority to dismiss these allegations for failing to state a claim upon which relief may be granted. *Id*.

1. Defendant's Motion for Summary Judgment (Doc. #17) be **GRANTED.**

2. This case be **TERMINATED** on the Court's docket.

July 24, 2026

s/Peter B. Silvain, Jr.
Peter B. Silvain, Jr.
United States Magistrate Judge

11

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).